**STATE of Tennessee, Plaintiff–Appellee,**

**v.**

**Franklin SANDERS, d/b/a Moneychanger, S.P., Defendant–Appellant.**

Supreme Court of Tennessee,
at Jackson.

May 28, 1996.

---

**2.** Tenn.R.App.P. 13(d).

Charles W. Burson, Attorney General and Reporter, Michael E. Moore, Solicitor General, Michael W. Catalano, Associate Solicitor General, Joel W. Perry, Assistant Attorney General, Nashville, John W. Pierotti, District Attorney General, Phyllis B. Gardner, Lee Wilson, Jr., Asst. District Attorneys General, Memphis, for Plaintiff–Appellee.

Arch B. Boyd, III, Memphis, Lowell H. Becraft, Jr., Huntsville, AL, Edwin Vieira, Jr., Manassas, VA, for Defendant–Appellant.

## OPINION

REID, Justice.

The primary issue presented in this case is whether the exchange of gold and silver coins and bullion for dollars constitutes the sale of tangible personal property which is subject to sales tax imposed by Tenn.Code Ann. § 67–6–101 *et seq.* A related issue is whether the criminal prosecution of the defendant pursuant to Tenn.Code Ann. § 67–1–1440(d) violated the defendant's constitutional right to due process. Both issues are resolved against the defendant. The record supports the judgment of conviction affirmed by the Court of Criminal Appeals.

The defendant was charged with violating Tenn.Code Ann. § 67–1–1440(d) by delaying the State in the collection of its lawful revenue and, in a separate count, by depriving the State of the realization of its lawful revenue. The defendant was convicted on both counts. The Court of Criminal Appeals reversed the conviction on the first count, on the ground of double jeopardy, and affirmed the conviction on the second count.

The defendant insists that the acts for which he was charged and convicted, which he characterizes as the "exchange" of Federal Reserve notes for silver or gold or the "purchase" of Federal Reserve notes with gold or silver, does not constitute the sale of tangible personal property.

In 1986, the Department of Revenue discovered that the defendant, who was not registered with the Department as a "dealer" under the sales tax statute, was advertising as a dealer in gold and silver bullion and coins and precious metals. The Department also discovered that the state of Arkansas had obtained a judgment against the defendant for sales tax owed on the sale of gold and silver coins and bullion at his place of business in West Memphis, Arkansas. While engaged in business in West Memphis, the defendant placed an advertisement in a Memphis newspaper, which stated: "[i]f you're a Memphis buyer, you save six percent sales tax on any purchase mailed to Tennessee." Soon after the state of Arkansas obtained its judgment for $66,223.51 for sales tax due, the defendant moved his business to Memphis, where he operated under various trade names including "Franklin Sanders Moneychangers" and "Money for Metals."

In July 1986, an agent of the Department purchased several bars of silver from the defendant at the defendant's place of business in Memphis. The defendant did not file a monthly sales tax return for the month of July. In September 1986, when the agent bought several more bars of silver from the defendant, he asked the defendant if sales tax was due on the transaction. The defendant responded that no tax was due because the defendant was purchasing the agent's Federal Reserve notes with silver. As a record of each transaction, the defendant gave the agent a "trade confirmation," which stated:

> [O]ur business legally is buying notes and paying for them in gold and silver. Our acceptance of Federal Reserve notes (the green paper you carry in your billfold) in exchange for gold and silver money is a function of our common law 'moneychanging' only, and is not an admission on our part, expressly or implicitly, that we recognize them as lawful or constitutional money.

A search of the defendant's business premises on September 18, 1986, by Revenue Department agents produced evidence of transactions in which the defendant had paid a total of $945,610.69 for U.S. gold coins, U.S. silver coins, Krugerrands and silver bars. During the search, the agents also found evidence of a letter written by the defendant in which he discussed the applicability of the Tennessee sales tax on the transactions. The letter, which was written after the state of Arkansas had obtained its judgment against the defendant, included the following:

> George, I realize that Arkansas can register this judgement [sic] in Tennessee and I realize that they may be able to cause me some trouble, but I don't own anything, nothing is in my name, I just have to hope that that is enough protection. As to the good sales tax people in Tennessee, I am no longer selling anything. Relying on the definition of Federal Reserve Notes at 12 USC 411, I am buying "obligations" and paying for them in lawful gold and silver money. This makes my invoices a bit hard to explain to my customers, but I think it will keep the State of Tennessee at bay.

■ The issue is whether the transactions were, as contended by the State, taxable sales of tangible personal property, or, as contended by the defendant, non-taxable exchanges of money for money. Consequently, the nature of the property, tangible or intangible, is an important factor.

Tenn.Code Ann. § 67–6–201(1) provides that every person engaged in the business of selling tangible personal property at retail in Tennessee is exercising a taxable privilege. Pursuant to Tenn.Code Ann. § 67–6–501, every dealer who sells tangible personal property is liable for payment of the sales tax. "Sale" is defined by Tenn.Code Ann. § 67–6–102(24)(A) as "any transfer of title or possession, or both, exchange, barter, lease or rental, conditional, or otherwise, in any manner or by any means whatsoever of tangible personal property for a consideration...." The term "tangible personal property" is defined by Tenn.Code Ann. § 67–6–102(28) as follows:

> "Tangible personal property" means and includes personal property, which may be seen, weighed, measured, felt, or touched, or is in any other manner perceptible to the senses. "Tangible personal property" does not include stocks, bonds, notes, insurance, or other obligations or securities....

■ The defendant insists that gold and silver bullion and coins are money, i.e., intangible personal property not subject to sales tax. Money is defined in the Uniform Commercial Code as "a medium of exchange authorized or adopted by a domestic or foreign government as a part of its currency." Tenn. Code Ann. § 47–1–201(24). Intangible personal property is not defined in Tennessee's tax statutes. However, as used in the law of taxation, intangible property "means such property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, copyrights, and franchises." *Black's Law Dictionary* 809 (6th ed.1990). This definition is consistent with the specific exclusion of "stocks, bonds, notes, insurance, or other obligations or securities" from the definition of tangible

personal property in Tenn.Code Ann. § 67–6–102(28).

Other jurisdictions with sales tax statutes similar to those in Tennessee have held that gold and silver bullion and coins are tangible property subject to sales tax. *Association of Alabama Professional Numismatists, Inc. v. Eagerton,* 455 So.2d 867 (Ala.Civ.App.1984); *Revenue Cabinet, Commonwealth of Kentucky v. Saylor,* 738 S.W.2d 426 (Ky.Ct.App. 1987); *Michigan National Bank v. Department of Treasury,* 127 Mich.App. 646, 339 N.W.2d 515 (1983); *Northwest Territories Gold & Silver Exchange, Inc. v. Commissioner of Revenue,* 377 N.W.2d 448 (Minn. 1985); *Scotchman's Coin Shop, Inc. v. Administrative Hearing Commission,* 654 S.W.2d 873 (Mo.1983) (en banc); *Losana Corp. v. Porterfield,* 14 Ohio St.2d 42, 43 O.O.2d 112, 236 N.E.2d 535 (1968); *Thorne and Wilson, Inc. v. Utah State Tax Commission,* 681 P.2d 1237 (Utah 1984).

In *Scotchman's Coin Shop,* the Missouri Supreme Court stated:

> When determining the merits of revenue cases, it is important to look beyond legal fictions and academic jurisprudence in order to discover the economic realities of the case. Expert testimony adduced indicated "money" has value as both a tangible and intangible asset. In order to determine whether the metal tokens were sold as tangible personal property, the essence of the transaction must be examined. It must be determined whether the coins were purchased for their tangible value, the value of the precious metal; or for their intangible value as a medium of exchange, the value established irrespective of the value given the precious metal.

654 S.W.2d at 875 (citations omitted).

The evidence in this case establishes the State's position that the transactions on which the defendant failed to collect and remit sales tax were based on the intrinsic value of the precious metals rather than their representative value as a medium of exchange. The most compelling evidence is the "trade confirmations" delivered by the defendant to his customers, which show that the value of each coin was based on its weight, not its value as established by the issuing government. For example, the record shows that one customer paid $8,020.00 for 20 Krugerrands valued at $401.00 per ounce rather than valued according to an exchange rate between dollars and Krugerrands.

■ The conclusion that the sale of coins is subject to taxation by the State does not interfere with the exclusive constitutional right of the federal government to "coin money." Article I, Section 10 of the United States Constitution.

> Imposition of sales tax on the sale of these coins does not impinge upon the exclusive right of the federal government to regulate the value of money, coin money, or determine the character of legal tender. The tax imposed on these transactions was based on the value of the precious metal; not the intangible value assigned the coins by the federal government. Common sense dictates this regulation has nothing to do with the coining of money or the regulation of its value.

*Scotchman's Coin Shop, Inc. v. Administrative Hearing Commission,* 654 S.W.2d at 876 (citations omitted).

The sales made by the defendant were subject to sales tax, and the defendant's failure to collect and remit tax on those sales violated Tenn.Code Ann. § 67–1–1440(d).

■ The defendant also contends that, even if the transactions were subject to sales tax, prosecution for failure to collect the tax imposed violated his constitutional right to due process guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article I, Section 8 of the Constitution of Tennessee. He claims that he had no fair warning that the statute imposed sales tax on the purchase and sale of gold and silver coins and bullion because the meaning of the statute is "vague or highly debatable." *United States v. Critzer,* 498 F.2d 1160, 1162 (4th Cir.1974).

Judge John Peay, writing for the Court of Criminal Appeals, addressed this issue with commendable succinctness. After finding that the federal cases relied upon by the defendant do not support his position, Judge Peay stated:

In fact, the relevant provisions of Tennessee's Code are rather clear in their applicability to the defendant's transactions.... The plain meaning of these statutory provisions is not, as the defendant contends, so vague and ambiguous as to lead one to believe that the sale of gold and silver coins and bullion is not subject to sales tax.

Even the *Mallas* [*United States v. Mallas,* 762 F.2d 361 (4th Cir.1985)] court conceded that "a duty not articulated by regulatory language or judicial construction may nonetheless be compelled by the authoritative force of common sense." *Mallas,* 762 F.2d at 364. Furthermore, the *Mallas* court also recognized that "due process does not require the prosecution to cite a litigated fact pattern directly on point." *Mallas,* 762 F.2d at 364 (citing *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 96 (2d Cir.1983)). In the *Ingredient Technology Corp.* case, the Second Circuit held the following:

> All the Due Process clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden, and thus not lull the potential defendant into a false sense of security, giving him *no reason even to suspect that his conduct might be within its scope.*

*Ingredient Technology Corp.,* 698 F.2d at 96 (quoting *United States v. Herrera,* 584 F.2d 1137, 1149 (2d Cir.1978)) (emphasis added). From a thorough review of the record in this case and the statutory provisions in question, we simply cannot conclude that the defendant's tax obligation is ambiguous as a matter of law. This claim is therefore without merit.

The rules of law regarding the other evidentiary and procedural issues raised by the defendant are well-settled and do not merit Rule 11 review. The resolution of those issues by the Court of Criminal Appeals is affirmed.

The judgment of the Court of Criminal Appeals affirming the defendant's conviction and sentence is affirmed.

Costs are taxed against the defendant.

ANDERSON, C.J., and DROWOTA and WHITE, JJ., concur.

BIRCH, J., not participating.